Hello, everyone. This is Judge Park. I'm here along with Judges Newman and Lynch. We have five cases on the calendar today, two of which are on submission. And for the arguments, I'm advised that all counsel are present, so we're ready to get started. We'll hear argument first in No. 20-3161, Picard v. Magliano. Thank you. Good morning, and may it please the Court. Eric Del Pozo for New York State. I've reserved two minutes for rebuttal. The District Court's facial injunction on Penal Law, Section 21550, sub 7, which I'll just call the Act, cannot stand. This Court should do one of three things. One, order the case dismissed for lack of Article III standing. Two, direct that the Act be enjoined solely to Mr. Picard's, as applied to Mr. Picard's, jury nullification advocacy. Or three, certify the question of the statute's proper scope to the New York Court of Appeals. I'll start with standing. The District Court correctly construed the Act not to apply to Mr. Picard's advocacy, but erred in holding that it arguably did. Application of this statute to Mr. Picard's sign-and-flyer mode of expression was a category error of the Act. So you agree that the statute does not apply to Mr. Picard? The parties dispute whether the statute arguably applies to Mr. Picard. Yes, but that's not what I asked. I asked, you agree that, in fact, it does not. That is our position, yes. Yes, it plainly does not. And but your position does not bind police departments or district attorneys around the State, does it? That's right. Judge Lynch, the statute is fairly unique, though, in applying to the perimeter of State courthouses where State court officers are going to be the primary enforcers and no State court officer should or will be arresting Mr. Picard in the future to the extent this Court is concerned that a local prosecutor or police officer may, in our view, misapply the Act to Mr. Picard or somebody engaging in similar advocacy. It could do one of the other two things that we've argued for in our brief, narrow the injunction solely as applied, which would provide to Mr. Picard's advocacy, which would provide him complete relief and cure those sorts of concerns or certify the case for a definitive construction. Well, but the DA's affidavit said that the reason for not prosecuting was that the distance was indeterminate, right? And so that seems to actually suggest that it wasn't because the law didn't apply to what he was doing, the actual activity. It was sort of where he was at in relation to the courthouse. That's right, Judge Park. But that statement doesn't assume that the Act applies. It simply takes no position on the question. It takes the path of least resistance. More important, we think, is that there's no definitive or even informal finding of probable cause like there was in Susan B. Anthony's list, which would support the view that the law objectively applies to Mr. Picard, not simply that he credibly fears enforcement because he was, unfortunately, mistakenly arrested, but that there is an objective statutory reading that could lead to a successful prosecution. And just one other question about the State's position. One thing that I thought was conspicuous by its absence from your brief is any argument at all that if the statute did apply to Mr. Picard, it would be constitutional as so applied. Yes. We are not taking that position. But to be clear, we are not rolling over. We seek to defend the statute in what we believe are its legitimate arguments. Yes. But you're not defending the constitutionality of the application of the statute to Mr. Picard. That's right. Not to the type of advocacy that doesn't concern any specific trial, let alone that's in accord with decisions like Hykland, which construed the Federal jury tampering statute solely to apply to specific trials as a matter of constitutional avoidance. So, yes, the parties actually agree that were Mr. Picard's advocacy to fall under the statute, it would be protected. But this one mistaken arrest shouldn't be a pathway for facial invalidation. And you also agree that the standard for standing is whether the law arguably applies. You just disagree with whether this statute even arguably applies to Mr. Picard. That's right, Judge Lynch. And even if you consider the content of Mr. Picard's flyers. And our first argument is that he held a sign that has nothing to do with any specific trial. It's just an importunment for prospective jurors to come get leaflets which are permitted under the act. They're akin to one-on-one conversation. And as the cases have held, have constitutional protection. So the New York law wasn't targeting those. But even if you would consider the content of the flyers, they do no more than suggest that some unidentified subset of people should disobey some unidentified class of laws and urge research on jury nullification. What if the flyer said, you know, you must acquit in the case of State v. Smith? If State v. Smith were pending in that very courthouse, Judge Parks, that would be the paradigmatic application of what the law would bar. Well, I thought one of your arguments was that the sign that he was holding didn't have to do with the case. Oh, I'm sorry. If solely the flyer said that, then no, those wouldn't be covered. I'm sorry. I misunderstood the question. Right. He holds up a sign that says jury info. And then when they show up, he gives them a flyer that talks about the case. This statute would not prohibit that. But if he knew that that person was a juror in State v. Smith, there would arguably be liability for jury tamping. Would that be arguably covered by the statute then? I guess I'm trying to find out the line. What does arguably mean here? Arguably means. Why is it not? Well, why is this not arguably prescribed by the statute? For the two main reasons that we've cited in our brief. One, and this goes back to your most recent question, the statute precludes only shouting, signage, calling aloud, things that could project to the courthouse entrance within the buffer zone, and a sign that doesn't concern a specific pending trial or, as here, really any trial wouldn't fall under the Act, regardless of what the flyers happen to say. But if the flyers, you were to consider the content of the flyers, in this case, those flyers wouldn't even arguably fall under the Act. The Act essentially takes the prohibitions on certain conduct inside the courthouse, like disrupting the trial or refusing to be sworn or answer a question, and brings them, exports them to the perimeter of the courthouse. But if this Court did think that the statute arguably applied to this conduct such that Mr. Picard had standing, we have two other arguments in the brief. It doesn't mean that Mr. Picard wins in our view. Does this record indicate whether a trial was going on at the time? It does not, Judge Newman. Does that matter? It would for a prosecution under a proper reading of the statute. One of the ingredients would be, one of the elements would be proof of the particular trial that was pending, so that the advocacy outside of the courthouse would actually connect to something. We think that that's even more proof why this particular general jury nullification advocacy just isn't, doesn't fall under the statute. But, you know, again, you take that position. And I realize that the cases I'm about to mention are under different statutes. But the U.S. Attorney's Office took the position that a rather similar statute that I would think would be susceptible to exactly the argument that you're making, they actually prosecuted someone unsuccessfully, but they prosecuted him. The government took that position. There's a Colorado Supreme Court case, again, ultimately unsuccessful, but the fellow got prosecuted and the case went all the way up to the Colorado Supreme Court before he was definitively exonerated. So I'm just having, you know, arguable is somewhat in the eye of the beholder, isn't it? So those two statutes I mean, you're taking the position that it would be frivolous for a prosecutor to take the position that this statute applied. We are taking the position that a prosecution would not stand an objective chance of success given the proper scope of the statute. But, again, given these concerns and the fact that the State does not control local prosecutors and local police, we ask that the Court in the alternative affirm the injunction solely as applied to Mr. Picard. The statute serves two compelling interests, sort of flip sides of the same State interest, one, preventing actual disruption in trials, and two, the one that we think the district court didn't give enough heed to, that is promoting public confidence in the integrity of the trial system. I see that my time is up. If I could, I'd like to Could you just repeat exactly what you acknowledged to Judge Lynch about when it would be unconstitutional? If the statute were applied to advocacy that did not regard a specific pending trial in the nearby courthouse, the State would not defend that application of the statute. If it did not apply? Is that what you said? I'm just trying to understand what you said. If the statute were applied, if, say, a local prosecutor would bring a case or someone were arrested for general advocacy outside of a courthouse relating to the justice system at large but not regarding a specific pending trial in that courthouse, we would not defend that application of the statute. We don't think the statute applies. And at least as far as Mr. Picard, we concede that the Constitution would protect that advocacy. Well, you wouldn't. You say you wouldn't defend it. Are you saying that wouldn't be a prosecutable case, or if it were prosecuted, it would be unconstitutional? We are saying both. The standing argument is the first question, the answer to the first question. And the merits argument is the answer to the second, which is why that we are seeking to defend only applications that we believe are presumptively legitimate under Supreme Court case law and are in the wheelhouse of what the statute was intended to prohibit, and that is a picketing mob outside of a courthouse within the 200-foot zone advocating a specific result. Well, you promote it a little when you say a mob. A mob tends to be at least either actually or potentially disrupted. What about a, leave the word mob out, just a group of people, or not even a group, one person who is there urging jury nullification? Is he prosecutable under the statute? Not if he were, if that person were urging. Not what? Not if that person were urging jury nullification in general, like Mr. Picard was, but if that person were, had a sign that said, State v. Smith, all jurors must acquit, Smith is innocent, then, yes, that would be prosecutable, and the statute properly reaches that particular advocacy. So for you, the test is, is he urging an outcome, an outcome in a case or a general approach to what juries do? Is that it? The former, Judge Newman, and that is the language of the statute itself. The statute prohibits shouting or signage, arguing for a specified outcome in a particular pending case in the adjacent courthouse. So that, yes, would be, would fall under the statute and, in our view, would be prosecutable, and legitimately so, or at least that this Court in this case doesn't need to decide that question. It's enough simply to affirm the injunction as applied to Mr. Picard's general jury nullification advocacy, if the statute arguably covered that. And it's what this Court did in American Booksellers in a case that presented, I think, a less compelling circumstance, where as applied relief, it was a statute there of Vermont law that directly targeted Internet obscenity, and the plaintiffs there, the challengers there were websites. Kennedy, what's your view? What is it for us? Your third option was certifying to New York. What is it we would ask the New York court to do, to decide? Definitively construe the statute and decide whether it applies to Mr. Picard's general jury nullification advocacy. Now, if it didn't, the case would be over because the parties agree that in that case, Mr. Picard would lack Article III standing. But you're here saying you wouldn't prosecute that case. Yes, but the test for pre-enforcement standing is whether the statute arguably applies, or the challenger has proffered an arguable interpretation. And if this Court were to think that the statute, that Mr. Picard's advocacy arguably falls under the statute. Are you saying on behalf of the State, the State would not prosecute that case? Well, the State has limited prosecutorial authority, Judge Newman. We are saying that. Whatever your reasons, are you saying the State would not prosecute that case? The State would not prosecute Mr. Picard's case if he were, say, tomorrow. Then why should we ask the New York court of appeals what they think about a case you wouldn't bring? Well, this is just the issue. Judge Cope was — she construed the statute not to apply to Mr. Picard's advocacy, but under the relaxed standards for pre-enforcement of First Amendment standing proceeded to the merits. It wasn't enough that the State — Well, Mr. — I think, isn't your argument that you don't control most prosecutions in New York State, which are brought by district attorneys who are responsible not to the attorney general, but to the voters of their particular county? That is the reality of the State local division. So that the fact that your office wouldn't bring such a case, your office probably couldn't bring — you know, I'm not an expert in the vagaries of when the attorney general could bring a case, but either it could not in the first place because it lacks the statutory authority to prosecute this kind of offense, or in any event, it would be a most unlikely scenario, and the likely scenarios involve local district attorneys and local police departments. That's exactly right. Judge Lynch and Judge Cope, after construing the statute in her view not to apply to the facts of this case, didn't have the luxury of certification. And this Court, by contrast, does. All three certification factors are met. I believe they're undisputedly met. There's no appellate authority in New York ever construing the statute. The statute and the activity that it prescribes is of public importance. Demonstrations outside of government buildings have just dominated the current news cycle. And the parties agree that construction, a definitive construction of the law not to apply to the general jurisdiction advocacy at issue here would move the case. If we agreed with Judge Cope about the standing issue and thought that the case was properly brought, do you care which of the other two outcomes that you're advocating for? As between those two, do you have a preference? Does your office have a preference? The office does not have a preference. We would be happy with either one, although we acknowledge that certification would be less economical, whereas an injunction as applied to Mr. Picard's advocacy would end the case. End the case. And protect the plaintiff's rights in full. The last thing I'll say about certification is that the only argument that Mr. Picard appears to make is that the statute, that certification would be futile because the statute is unconstitutional facially no matter what. Now, that assumes the very conclusion that certification would seek to avoid. This Court has in the past on multiple occasions certified cases to the ñ certified questions to the New York Court of Appeals that would inform whether a party has standing. One of those cases, In re Rural Trade Center, Judge Lynch, you were on that panel. And at a minimum, a definitive construction of this law, and the Court of Appeals could pick ñ could settle on an interpretation in between the polls that the parties have presented would, at minimum, inform an overbreadth analysis because this Court can't intelligently determine whether a statute reaches too far unless it actually knows what the statute covers in the first instance. Roberts. Thank you, counsel. You have reserved two minutes for rebuttal. Mr. House. May it please the Court. My name is Brian House, and I represent Appalee Michael Picard. I'd like to start with something that the parties agree on. The Act makes it a crime to carry a sign protesting a prosecution outside of a courthouse on the public street, even if there is no intent to influence a judge or jury, and even if there is no danger that it will interfere with the administration of justice. Mr. House, could I ask a simpler question? I understand perfectly well why Mr. Picard wants to bring this case, and I understand the argument that you make and that Judge Cote adopted for why he has standing to do so. I'm having a little bit more trouble understanding why you're still here after this is over. Well, I think it's fair to say that Mr. Picard has decided that an injunction that protects the only advocacy that Mr. Picard has ever engaged in or expressed any desire to engage in, anything that he has done or that he says he's ever going to do, is, A, in their view, not even against the statute, but, B, is constitutionally protected, and essentially he's assented to an injunction that protects Mr. Picard in everything he wants to do. So what's his beef with whether, and why should we be deciding, whether a howling mob standing outside the courthouse right across the street saying either hang a given defendant who's on trial inside or free him and hang the judge and jurors who might convict him? Why do we have to decide whether it's constitutional for New York State to have a statute that would prohibit that? Why does Mr. Picard care? Why should we have to address that at this point on these facts? Well, Your Honor, it's going to be true in every case, in every facial First Amendment challenge, that an as-applied injunction would protect the individual plaintiff's rights, but in a facial First Amendment challenge, the Supreme Court has said that this Court also has to consider the First Amendment rights of other members of the  And that's the difference. Yeah, but, you know, and you say we're going to have to face this eventually, right? That's right, Your Honor. We haven't had to face it in 50 years. In fact, almost no one has ever been prosecuted for violating this statute. Very few people have ever been arrested. I'm guessing that a reasonable number of people have probably been chased off the 200-foot thing, space, outside a courthouse. But why are we ever going to have to face this? Well, Your Honor, a statute like this is a little bit like Chekhov's gun. It's lying around. It could go off at any time. Perhaps it hasn't gone off very many times in the past 40 years or so, but it's always possible that there is going to be significant public interest in protesting a particular prosecution. And in that moment, the Court will have to decide very quickly whether the statute can constitutionally prohibit that protest. But that's not such a laid-down case for you, is it? I mean, think about cops against Louisiana. The Supreme Court says the statute or the ordinance in that case, it assumes that that serves a compelling interest and decides the case on a different ground in favor of the case where they were told that over there is okay and then they were arrested for going over there. But they sort of assume that that's okay. And I'm having a little trouble understanding why this is, you know, a grossly, facially unconstitutional statute applied to at least some cases, applied maybe to the core cases that the State says it's designed for. Well, Your Honor, the fundamental difference between this case and Cox v. Louisiana is that in Cox you had a content-neutral statute and in Cox there was an intent requirement. And so that tailored the statute to an unlawful intent to interfere. Wait, wait. See, this content-based thing bothers me. I realize the Supreme Court says it's very important if there's any content-based anything. But I'm having a little trouble understanding how it can possibly be the case that it's a better thing for the State to have a regulation that prohibits all demonstrations, even like anti-Vietnam War or Black Lives Matter or something that has nothing to do with anything going on in the courthouse at that moment. It's better, it's okay to have that because it's content-neutral. But if they just say not anything that might interfere with what's going on, not anything that addresses what's going on in the courthouse is a problem. Why is that worse? Well, Your Honor, even a content-neutral regulation would have to be narrowly tailored. And that was exactly the problem in United States v. Grace. And the trick is to find the right mechanism for tailoring the statute to the government's interest. And what the Supreme Court has told us is that content-based, facially content-based mechanisms are presumptively illegitimate. But intent requirements, effect requirements, they're more legitimate. Yeah, that's weird too, isn't it? Because these statutes are not probably designed to put anyone in prison, right? They're designed to chase people away, to tell them that it's illegal and maybe even to arrest them. And then in the fullness of time, the cases get dismissed and nobody gets prosecuted. And if that's the case, if that's what the functional thing is, why does an intent requirement help at all? Because why isn't there at least probable cause to believe that someone who's out there chanting with a large group of people with big signs about a case that's going on, isn't there at least a reasonable, wouldn't a reasonable person at least think there's probable cause to believe that they intend to influence what's going on in there? Well, Your Honor, I think protesters will be a lot more comfortable, even when they're confronted by an officer and threatened with arrest, if they know that they can fall back on this intent requirement. And that's exactly what happened in the United States v. Carter. Unfortunately, it didn't go the protester's way there. But they wanted to make a jury argument saying that under these circumstances, you should not infer that we had any intent to interfere with the trial. So if you have a single protester holding a poster board sign saying this particular prosecution is unjust, he's holding it far away from anywhere where the judge or jury might enter. I think under those circumstances, it would be very, very difficult. Well, wait, you said far away. Why isn't within 200 feet of the courthouse? You're saying that's an unreasonable, if it was within 20 feet of the entrance, you wouldn't be here? Well, Your Honor, I do think a 200-foot buffer zone is quite large. The buffer zone in Burson v. Freeman, for example, was 100 feet. The buffer zone in McCullen was 35 feet. So a 200-foot buffer zone is quite big. But also, there might be entrances in the courthouse where the judge and jury enter and different entrances where the public enters. And so someone who's holding a poster board sign protesting a prosecution, they say, I was holding that where the public enters. It was very unlikely that the judge or jury would ever have seen me. They were already inside the courthouse. Under those circumstances, I think it would be very difficult for a prosecutor to bring in a prosecution saying you had the intent to influence a judge or jury. And similarly, I think police officers would understand that under those circumstances, when you don't have the mob outside the courthouse, but when you have a few solitary protesters with signs, that the act does not apply to that sort of conduct or that sort of expression. When you talk about intent, are you saying the statute requires intent? This statute does not require intent, Your Honor. All it requires is for the defendant to have displayed a sign. That's what I thought. That's why I didn't quite understand all this talk about intent. We don't have an intent statute. Well, so, Your Honor, our point was that a constitutional statute can use an intent requirement. That was the statute in Cox v. Louisiana. That had an intent requirement. So it didn't prescribe the speech based on what was being said. Instead, it prescribed the speech based on whether or not it was said with an improper intent. And so that is the key distinction between this case and Cox. And I think that's what makes this statute unconstitutional. And I would note that this is the... You're saying that if he holds... Let's say he's within 10 feet of the juror walking in. And he has a sign saying, free this person on trial now. It's constitutional so long as he doesn't intend that. He was just given a sign by a friend. Hold this sign. The guy says, I don't even know what it says. I'll pay you five bucks if you'll hold this sign. I think that would likely be constitutionally protected, Your Honor, because he wouldn't have the intent. He has to do that. The juror doesn't know walking in whether he was paid or not, right? The juror does not know any of that. So the juror is likely to be just as influenced by the content of the sign regardless of what's in the mind of the sign holder. Well, Your Honor, as Judge Cote pointed out in her order, the court has lots of other tools at its disposal to address this problem. One of those tools is providing a prophylactic instruction to jurors at the beginning of the trial. Say, don't read anything anybody hands to you outside of the courthouse. You know, do not consider the prospect of jury notification. You can also — The State has to rely on that alternative? No. There are other alternatives the State can adopt here. The State can also restrict all sign holding on the courthouse grounds, and that's what the D.C. Circuit held in Hodge v. Talkin is that on the actual courthouse property, when you're not in a traditional public forum that has been held open for protest, the court has a lot more leeway, the government has a lot more leeway, to restrict all expressive activity. Additionally, of course, there are, you know, obstruction statutes, tampering statutes that the State can enforce under various circumstances. Do you regard the 200 — the length of that 200-foot area as beyond narrow tailoring? Your Honor, I think the length is significant. That is quite a large buffer zone, but I think the fundamental point for narrow tailoring here is New York is the only state that has a content-based courthouse protest statute. The federal government and every other state that has adopted one of these statutes uses an intent-or-effects requirement. And so this statute is really an outlier when it comes to constitutionally protected expressions. I don't understand that argument. We hear that once in a while. What difference that 49 other states haven't done this? If this statute is within constitutional limits, why do we care that 49 other states didn't do it this way? Well, Your Honor, I think the fact that 49 other states did not adopt a content distinction, which the Supreme Court has said is presumptively illegitimate, is strong evidence that a content distinction is unnecessary. And so given that content-based distinctions are inherently disfavored, the availability of a content-neutral alternative that's more closely tailored to the conduct that the government is trying to suppress is an example of a less restrictive alternative. I would also note that it's the State's burden under strict scrutiny to demonstrate that the law survives and that it is necessary to vindicate a compelling governmental interest. Do time, place, and manner restrictions, if they cover something that is content-based, always get strict scrutiny? Pretty much always, Your Honor. Pretty much? I'm struggling to think of an exception. But when you have a restriction on speech in a traditional public forum that is — Polling places? I'm sorry, Your Honor. Polling places? So the Court applied strict scrutiny in Berson v. Freeman, and it upheld the law. And the reason it upheld the law is it said that there was a 50-State consensus that this was necessary. And so in that context, there was a very robust consensus among all the relevant jurisdictions that a content-based distinction within 100 feet of the polling place was necessary to vindicate the government's interest. Here, the government doesn't have the consensus, and it hasn't submitted any other evidence. And you think whether it's constitutional, we just count the States. So if it was 40 to 10, that would be likely constitutional. If it was 35 to 15, doubtful. Is that how we apply the Constitution? I don't think it's a math test, Your Honor. But the point is that the State has the burden of demonstrating that the Act survives strict scrutiny. And so the State hasn't put in any evidence demonstrating that it can really survive. That aside from Chief Maguillano's kind of bare-bones declaration in the Supreme Court held in Playboy Enterprises that those sorts of anecdotes and suppositions are not enough to satisfy strict scrutiny. So if the State can't rely on that, it has to turn to something else. The thing the State tried to turn to here was a robust consensus among jurisdictions. But in fact, such a consensus simply does not exist. And that's why the Act fails narrow tailoring, as Judge Cote correctly held. Has the Supreme Court ever told us to count the States that do something to decide whether something's constitutional? Well, Your Honor, I think the relevant point here is that in Burson v. Freeman, the Supreme Court said that evidence of a robust consensus can provide support to carry the government's burden under strict scrutiny if the government doesn't have other evidence. But here the government doesn't have that consensus and it doesn't have the other evidence. So it needs something to survive strict scrutiny because it bears the burden. Thank you, counsel. Mr. Del Poso, you've got two minutes for rebuttal. Thank you. I'd like to make four points on rebuttal. One, this case is like an electioneering case in which the Supreme Court has upheld buffer zones around polling places. Both those laws and this one protect other fundamental rights. Anything as long as 200 feet? Well, the Supreme Court said in Burson that if the Court concludes that some restricted zone is necessary, then the State need not empirically prove that its chosen zone is perfectly tailored. Mr. Picard has not challenged the 200-foot distance previously in this case. This is the first time, to my knowledge, that he's bringing it up, so the argument is forfeited. But the 200-foot zone would be a sound exercise of legislative judgment. He can't, by his advocacy or lack of it, limit what we rule in this case. You're here telling us to make a ruling, and you're saying because he didn't say 200 is too big, we can't pay attention to that? Well, the Court can consider even defaulted arguments. I was simply pointing out that the argument is forfeited, but more to the point, Judge Newman, the Supreme Court said in Burson, and upholding a law that we think is fairly analogous to this law in its purpose and effect, once you conclude that a restricted zone is constitutionally permissible, we're not going to require the State to show that the particular number of feet is perfect. Mr. Picard's main argument is that the number of feet should be zero. Well, and if we were to consider whether 200 feet is too much, how would we decide that, wouldn't we have to send it back to the district court and say decide whether 200 feet is too much, take evidence on whether 200 feet is, why 200 feet, and, you know, have sound engineers come in and testify that 200 feet is where you could definitely hear inside the courthouse what's being said, at least through a loudspeaker, or the visual acuity of people, would they be able to see it from signs from inside the courthouse or whatever? Is that what we'd be in for? A factual hearing would be prudent for informed fact-finding on that type of question, and that gets me. But, of course, since that argument was not raised by Mr. Picard, there was no opportunity or reason for the State to put in evidence about 200 feet and have suggested that Judge Cote have a hearing of that sort. That's right, Judge Lynch, and it brings me to my second point and a broader point. Just as this Court should not hypothesize about whether 100 or 200 feet is a more appropriate buffer zone, nor should the Court hypothesize about cases that may arise in the future with a single protester holding a particular sign or a mob of protesters holding a particular sign. Let those cases arise, and the Court can adjudicate them as they arise. Our position is that New York's law validly targets or wants to deter outside of State courthouses the kind of thing that happened on the plaza outside of this courthouse in the late 1940s with throngs of people demonstrating, demanding the dismissal of an indictment. And that's not the only important interest that this law serves. The law also protects defendants' fair trial rights. So the protesters could be demanding a conviction. And as the Supreme Court said in Cox v. Louisiana, having a hostile or friendly mob demanding an outcome outside of a courthouse is the very antithesis of due process. I just want to ask a question about the scope of the statute. I thought I heard you say during your principal argument that we're not protected by this, that it's a State courthouse, and therefore it would only be – you said this protects only State courthouses, and therefore it wouldn't be the NYPD so much as State-employed court officers who would be enforcing it. That's right. But so if there was a howling mob in Foley Square protesting jointly a prosecution in the State courthouse and in the Federal courthouse, maybe the State court officers could intervene, and that would violate the statute. But if they took down the part about the trial in the State courthouse, they could still be there? There is a Federal statute that bars – Yeah, but is there anything – where in this statute does it say that? It says, on a public street or sidewalk within a radius of 200 feet of any building established as a courthouse. Is that defined somewhere as a State courthouse? It would have to be – it is most naturally construed to apply to State courthouses. No one has ever argued that it applies to Federal courthouses, nor – well, I won't speak for what a county prosecutor would do. It would not be a legitimate application of the Act.  You're saying that would not be a legitimate application of the Act. Because the Act reaches speech or shouting or signage concerning trials being held inside of a State courthouse. So for that reason as well, if the protesters were protesting something in the Federal courthouse – Does it say that? It says such courthouse. So it's all a question of whether established as a courthouse should be construed to reach only State courthouses. It is also within the New York State penal law, which presumptively applies to State facilities. In the most capacious textual reading, then perhaps somebody could make that argument, but we don't think that the statute fairly applies to this courthouse. Got it. Thank you. I will say one last thing. Briefly, counsel. Thank you. No, you can wrap up briefly. That's what I said. Thank you, Judge Park. The statute, even as Judge Cote acknowledged, bears several indicia of narrow tailoring. The content distinction is actually a virtue in this case. It does trigger strict scrutiny, but it also makes the prohibition fit the State's interest like a glove. It is not over-inclusive. It doesn't bar one-on-one conversations, nor does it bar general political protests outside of courthouses, at least this statute doesn't, and nor is it under-inclusive, not reaching other types of speech that would similarly denigrate the judicial process. That was the flaw in the statute in Reed v. Gilbert, for example. The statute was riddled with so many exemptions, it placed analogous billboards on a different footing. There's no risk of that happening here, and the statute is not duplicative. Contrary to what Judge Cote held, there is no other law that, at least I know of, or that we've been able to find that reaches broad-based, indiscriminate, trial-related speech within 200 feet outside of a State courthouse that doesn't target any particular juror or witness. So this statute serves a unique and distinct function, has presumptively legitimate applications under binding Supreme Court case law. We think that the statute should be, or that the injunction should be limited for that reason to an as-implied injunction, or alternatively, the question of its scope should be certified to the New York Court of Appeals. Thank you. Thank you, counsel. We'll take the case under advisement.